UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
ROSLYN HARRIS and MARY ALLEN,           :
                                        :
                            Plaintiffs, :        21cv6789 (DLC)
                                        :
            -v-                         :        OPINION AND ORDER
                                        :
PFIZER INC.,                            :
                                        :
                            Defendant.  :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiffs:
Andrew Obergfell
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019

For defendant:
Colleen Gulliver
Loren H. Brown
Jessica Carol Wilson
DLA Piper US LLP (NY)
1251 Avenue of the Americas
27th Floor
New York, NY 10020

DENISE COTE, District Judge:

     Roslyn Harris and Mary Allen bring this putative class

action against Pfizer Inc. ("Pfizer") after its voluntary recall

of the drug Chantix, which was found to be contaminated with

excess levels of a N-nitroso-varenicline.  Pfizer has moved to

dismiss the complaint.  For the following reasons, the motion is

granted.

**Background**

The following facts are derived from the first amended complaint ("FAC"), unless otherwise noted, and are assumed to be true for the purposes of this motion.  Pfizer is a New York corporation, with its principal place of business in New York.  Pfizer manufactures and distributes Chantix, a prescription drug used to help consumers quit smoking.  Chantix's medication guide recommends that most people take the medication for up to 12 weeks, with the possibility of another 12-week course afterward if necessary.[1]  The active ingredient in Chantix is varenicline.

Plaintiffs' claims arise out of Pfizer's recall of Chantix due to the presence of N-nitroso-varenicline.  N-nitroso-varenicline is a nitrosamine, a chemical compound classified as possibly carcinogenic.  On July 2, 2021, the Food and Drug Administration ("FDA") announced Pfizer's recall of nine lots of Chantix to the warehouse level due to contamination from N-nitroso-varenicline above the FDA's acceptable intake level of 37 nanograms per day.  To abate a shortage of the medication, the FDA increased its acceptable intake level to an interim level of 185 nanograms per day.  Nevertheless, Pfizer expanded

---

[1] See CHANTIX® Medication Guide, Pfizer (Feb. 2019), https://www.pfizermedicalinformation.com/en-us/chantix/medguide.

its recall to twelve lots of Chantix on July 19, 2021, and then to all lots of Chantix to the consumer level on September 16, 2021, due to the presence of N-nitroso-varenicline exceeding the interim acceptable intake level.

Plaintiff Roslyn Harris is a citizen of New Jersey.  She purchased four one-month boxes of Chantix in New Jersey between 2019 and 2021, each of which was subject to recall.  Plaintiff Mary Allen is a citizen of New York.  She purchased three one-month boxes of Chantix in New York between 2020 and 2021, each of which was subject to recall.

Both plaintiffs paid a co-pay for Chantix, and consumed at least some of the medication they purchased.  Neither plaintiff, however, alleges that they have suffered any detriment to their health as a result.  Instead, the plaintiffs allege that they did not know that Chantix contained N-nitroso-varenicline, that they did not see it listed as an ingredient on the medication's box or labeling, and that they would not have purchased the medication if they had known it was contaminated.  The plaintiffs complain that the presence of N-nitroso-varenicline

rendered the product they paid for worthless.  They seek damages solely for their economic injury.[2]

Plaintiff Rosalyn Harris brought this action against Pfizer on August 12, 2021.  Pfizer moved to dismiss the complaint on October 21.  The complaint was then amended on November 10, adding Mary Allen as a plaintiff.  Pfizer moved to dismiss the amended complaint on December 1, and the plaintiffs opposed the motion on December 22.  The motion became fully submitted on January 12, 2022.

This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA").  CAFA confers federal jurisdiction over "certain class actions where: (1) the proposed class contains at least 100 members; (2) minimal diversity exists between the parties; and (3) the aggregate amount in controversy exceeds $5,000,000."  Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (citation omitted).  The FAC alleges that there are over 100 class members, and that the aggregate amount of the class members' claims exceeds $5,000,000.  Additionally, Harris is a resident of New Jersey,

---

[2] Pfizer has offered a full rebate for any unused Chantix purchased by consumers.  Therefore, this lawsuit seeks damages for economic injury attributable to Chantix tablets that the plaintiffs consumed.

while Pfizer is a New York corporation headquartered in New

York.  CAFA's diversity, numerosity, and amount-in-controversy

requirements have therefore been satisfied.

### Discussion

The FAC brings causes of action against Pfizer for breach

of express warranty, breach of the implied warranty of

merchantability, violation of New Jersey's Consumer Fraud Act,

unjust enrichment, fraud, negligent misrepresentation, and

violation of New York General Business Law §§ 349, 350.  Pfizer

has moved to dismiss the case for lack of standing pursuant to

Fed. R. Civ. P. 12(b)(1), and for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6).

It is worth noting at the outset what claims the plaintiffs

do not bring.  The plaintiffs' claims arise out of Pfizer's

recall of Chantix due to contamination from N-nitroso-

varenicline exceeding the legal limit.  But the Food, Drug, and

Cosmetic Act does not create a private cause of action.  PDK

Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997).

The plaintiffs therefore disclaim any attempt to privately

enforce the FDA's limits on nitrosamine contamination.  Instead,

when a consumer is injured by a defective pharmaceutical, the

consumer typically brings a state-based tort action for products

5

liability.  See Desiano v. Warner-Lambert & Co., 467 F.3d 85, 87
(2d Cir. 2006).  But the plaintiffs do not bring a products
liability claim either; they do not allege that they have
suffered any emotional or physical injury from taking Chantix.

The plaintiffs instead bring claims grounded in contract
and fraud.  Such claims have the advantage (for the plaintiffs)
that they do not require a showing of personal injury.  See
Bellevue S. Assoc. v. HRH Constr. Corp., 78 N.Y.2d 282, 294
(1991) (distinguishing between contract and product liability
claims).  They do, however, require the plaintiffs to plausibly
allege that Pfizer represented or warranted that their product
was free of nitrosamines -- or at least that Pfizer had a duty
to disclose any nitrosamine contamination.  As discussed below,
the plaintiffs have failed to allege sufficient facts to meet
this requirement.  Accordingly, their claims are dismissed.

I.  Standing

To meet Article III's standing requirements, a plaintiff
"must have (1) suffered an injury in fact, (2) that is fairly
traceable to the challenged conduct of the defendant, and (3)
that is likely to be redressed by a favorable judicial
decision."  Melito v. Experian Marketing Solutions, Inc., 923
F.3d 85, 92 (2d Cir. 2019) (quoting Spokeo, Inc. v. Robins, 578

6

U.S. 330, 338 (2016)).  The injury-in-fact requirement may be satisfied by "traditional tangible harms" such as physical and monetary harms."  Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58, 63 (2d Cir. 2021).

The FAC plausibly alleges that the plaintiffs have suffered an economic injury sufficient to confer standing.  The FAC alleges that the plaintiffs purchased medication with a serious defect that Pfizer did not disclose, and that as a result, they paid more for the medication than it was worth.  In other words, the plaintiffs' economic injury is "the difference in price between what they would have paid for the [medication] with full information and what they in fact paid." Dubuisson v. Stonebridge Life Ins. Co., 887 F.3d 567, 575 (2d Cir. 2018). Such an injury is sufficient to confer standing.  See id.

Pfizer argues that the plaintiffs did not in fact overpay for Chantix, and insists that the plaintiffs received the full benefit of their bargain.  This argument, however, goes to the merits of the plaintiffs' claims, not their standing to bring them.  Whether the plaintiffs have alleged sufficient facts to recover damages is a distinct question from whether they have standing to seek those damages in the first instance.  See Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004).  A

court must therefore assume the merit of a claim when deciding whether a plaintiff has standing.  Dubuisson, 887 F.3d at 574.

## II.  Failure to State a Claim

Pfizer moves to dismiss each of the FAC's causes of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  In order to state a claim and survive a motion to dismiss, "[t]he complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs."  Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).  To evaluate the adequacy of a complaint, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."

United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2021)
(citation omitted).

    A.   Fraud

    Pfizer moves to dismiss the plaintiffs' claims for fraud,
which are brought under New York and New Jersey law.  A fraud
claim under New York law consists of five elements: "(1) a
material misrepresentation or omission of a fact, (2) knowledge
of that fact's falsity, (3) an intent to induce reliance, (4)
justifiable reliance by the plaintiff, and (5) damages."
Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797
F.3d 160, 170 (2d Cir. 2015).  The elements of fraud are similar
under New Jersey law.  See Gennari v. Weichert co. Realtors, 148
N.J. 582, 610 (1997) (listing the elements of fraud).  A cause
of action for fraud may be based on an omission rather than
affirmative statement, but "only if the non-disclosing party has
a duty to disclose."  Remington Rand Corp. v. Amsterdam-
Rotterdam Bank, N.V., 68 F.3d 1478, 1483 (2d Cir. 1995) (New
York law); see also Rosenblit v. Zimmerman, 166 N.J. 391, 406
(2001) (a fraudulent concealment claim requires that the
defendant have "a legal obligation to disclose." (citation
omitted)).

A party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  To meet Rule 9(b)'s heightened pleading standard, the complaint must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Loreley Fin. (Jersey) No. 3 Ltd., 797 F.3d at 171 (citation omitted).  Additionally, though "mental states may be pleaded generally" a plaintiff "must nonetheless allege facts that give rise to a strong inference of fraudulent intent." Id. (citation omitted); see also Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013).

    1.  Misrepresentation

The FAC fails to allege that Pfizer made any fraudulent statement.  The plaintiffs allege that Pfizer made two misrepresentations: first, that the product they purchased was "Chantix", as approved by the FDA; and second, that the product contained only the active ingredient varenicline.  The plaintiffs argue that these representations were false or misleading because the medication was contaminated by N-nitroso-varenicline.  But neither the product label nor the medication

10

guide state that varenicline is the only biologically active ingredient in Chantix.  And presence of a contaminant does not render the brand name on the label false -- contaminated Chantix is still Chantix.

The plaintiffs nevertheless insist that the contamination meant that the medication they bought is distinct from the "Chantix" approved by the FDA.  But the FAC alleges no facts to suggest that the Chantix they purchased differs in any way from the drug approved by the FDA, much less that it differs so much as to no longer be Chantix.

The FAC also fails to allege that Pfizer had knowledge that their drug was contaminated by N-nitroso-varenicline at the time the plaintiffs purchased it.  The FAC alleges that nitrosamine had been detected in other drugs by 2018, and that one of Pfizer's distributors was warned in October of 2020 that its supply of varenicline was at risk of contamination as well. These allegations, however, at most only show that Pfizer may have known that its medication was at risk of contamination by late 2020.  They do not show that Pfizer knew or believed that Chantix was actually contaminated, particularly when the plaintiffs purchased Chantix in 2019 and the spring of 2020. These allegations are therefore insufficient to give rise to a

11

"strong inference" that the Pfizer had "knowledge of their
misstatements' falsity and an intent to induce reliance."
Loreley Fin. (Jersey) No. 3 Ltd., 797 F.3d at 176; see also
Banco Popular N.A. v. Gandi, 184 N.J. 161, 174 (2005).

     2.  Omission

At its core, the issue giving rise to the plaintiffs'
claims is not that Pfizer inaccurately labeled its drug as
Chantix or varenicline, but that Pfizer failed to disclose any
nitrosamine contamination.  A plaintiff may bring a fraud claim
based on an omission rather than an affirmative
misrepresentation only "if the non-disclosing party has a duty
to disclose." Remington Rand Corp., 68 F.3d at 1483.  Unless
the parties have a fiduciary relationship, a duty to disclose
will generally arise under New York law only when "(1) one party
makes a partial or ambiguous statement that requires additional
disclosure to avoid misleading the other party, or (2) one party
possesses superior knowledge, not readily available to the
other, and knows that the other is acting on the basis of
mistaken knowledge." Id. at 1484 (citation omitted).
Similarly, under New Jersey law, there is no duty to disclose
"unless such disclosure is necessary to make a previous
statement true or the parties share a special relationship."

Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1185 (3d Cir. 1993) (citation omitted).  A claim for fraudulent omission requires that it be "apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact."  Remington Rand Corp., 68 F.3d at 1484 (citation omitted).

The plaintiffs have not plausibly alleged a duty to disclose.  The plaintiffs do not contend that they are in a special or fiduciary relationship with Pfizer.  And, as discussed above, the FAC has not plausibly alleged that Pfizer had knowledge that their medication was contaminated.  Finally, the FAC does not allege that Pfizer understood that its concealment of the contamination was material to the plaintiffs.

Nor does the FAC identify a partial statement by Pfizer that was rendered false or misleading by any omission.  The plaintiffs suggest that Chantix's product and active ingredient labels are misleading because they do not disclose the presence of a nitrosamine contaminant.  But that omission does not render either the brand name "Chantix" or the active ingredient label "varenicline" false or misleading -- those terms correctly identify the product that the plaintiffs actually purchased.

Accordingly, the FAC has not plausibly alleged a claim for fraudulent omission.

B.   New Jersey Consumer Fraud Act

Harris brings a claim for violation of New Jersey's Consumer Fraud Act ("NJCFA").  The NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon [it] in connection with the sale or advertisement of any merchandise or real estate."  N.J. Stat. Ann. § 56:8-2.  "An unlawful practice contravening the [NJ]CFA may arise from (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation." Dugan v. TGI Fridays, Inc., 231 N.J. 24, 51 (2017).  If the unlawful practice alleged is an omission, however, the plaintiff must show intent.  Id.  Additionally, NJCFA claims are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b).  See Frederico v. Home Depot, 507 F.3d 188, 202-03 (3d Cir. 2007) (affirming a dismissal of a NJCFA claim under Rule 9(b)).

Harris' NJCFA claim fails for largely the same reasons as her fraud claim.  The FAC does not plausibly allege that Pfizer made any misrepresentation, as it pleads no facts to show that

the brand name or active ingredient listed on the product label were inaccurate.  And to the extent that the NJCFA claim is premised on Pfizer's failure to disclose the presence of N-nitroso-varenicline, the plaintiffs have not plausibly alleged that Pfizer knew that its medication was contaminated by a nitrosamine when the plaintiffs purchased it, or that Pfizer intended to defraud them.  See Dugan, 231 N.J. at 51; Gennari, 148 N.J. at 605 ("For liability to attach to an omission or failure to disclose the plaintiff must show that the defendant acted with knowledge.").  Accordingly, Harris' NJCFA claim must be dismissed.

    C.   Negligent Misrepresentation

    Pfizer moves to dismiss the plaintiffs' claims for negligent misrepresentation.  Under New Jersey law, a plaintiff states a claim for negligent misrepresentation when the plaintiff plausibly alleges that the defendant owed a duty of care to the plaintiff and negligently provided the plaintiff with false information, and that the plaintiff "incurred damages proximately caused by its reliance on that information." Highland Ins. Co. v. Hobbs Group, LLC, 373 F.3d 347, 351 (3d Cir. 2004).  New York law has somewhat stricter requirements. Under New York law, the plaintiff must also allege that the

defendant knew that the plaintiff desired the information for a "serious purpose," and that the plaintiff and the defendant had a "special relationship" conferring a duty "to give correct information." Anschutz Corp v. Merrill Lynch & Co., Inc., 690 F.3d 98, 114 (2d Cir. 2012) (citation omitted); cf. Highland Ins. Co., 373 F.3d at 355 (no "special relationship" requirement under New Jersey law).

Additionally, a plaintiff cannot ordinarily recover in negligence against a manufacturer when the plaintiff has only suffered an economic loss. See Bellevue S. Assocs. v. HRH Constr. Corp., 78 N.Y.2d 282, 294 (1991); Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620, 641 (1997). Such claims are instead better brought under the law of contract, which is designed to provide a remedy for disappointed economic expectations. See Bellevue S. Assocs., 78 N.Y.2d at 294; Alloway, 149 N.J. at 641.

The Second Circuit has not determined whether claims for negligent misrepresentation are subject to the heightened pleading standard under Fed. R. Civ. P. 9(b). See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 188 (2d Cir. 2004) ("Rule 9(b) may or may not apply to a state law claim for negligent misrepresentation."). District

16

courts in this circuit, however, have tended to hold that Rule 9(b) does apply.  Id.

Because the plaintiffs claim only economic harm, rather than personal injury, the economic loss doctrine bars their negligent misrepresentation claim.  The plaintiffs argue that the economic loss doctrine does not apply, because their claim is not merely that Pfizer failed to fulfill the plaintiffs' economic expectation under a contract, but that Pfizer's misrepresentations induced the plaintiffs to enter into the contract in the first instance.  This argument fails, however, for two reasons.  First, a claim for negligent misrepresentation cannot be raised unless it arises from a duty independent of a contractual relationship between the parties.  Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 280 (2002); see also Bellevue S. Assocs., 78 N.Y.2d at 295.  But the alleged misrepresentation here -- that the drug the plaintiffs purchased was Chantix with the active ingredient varenicline -- is not a separate statement that induced the plaintiffs to enter into a contract with Pfizer; it is the statement that the plaintiffs allege actually constituted the contract that Pfizer breached.  And second, the FAC again fails to plausibly allege that Pfizer made any misrepresentation.  The product label stating that the drug the

plaintiffs purchased was Chantix, with the active ingredient varenicline, was not a misrepresentation when it accurately described was what the plaintiffs received.  The FAC has therefore failed to plausibly allege that Pfizer breached any duty to disclose.

D.    False Advertising and Deceptive Business Practices

Pfizer moves to dismiss plaintiff Mary Allen's claims under the New York General Business Law ("GBL").  New York law prohibits "false advertising" and "deceptive acts or practices in the conduct of any business, trade, or commerce in the furnishing of any service in this state."  N.Y. Gen. Bus. Law §§ 349(a), 350.  A plaintiff bringing a claim under these statutes must allege "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020) (citation omitted).  An act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013).  "It is well settled that a court may determine as a matter of law that an allegedly deceptive

18

advertisement would not have mislead a reasonable consumer." Id.

The FAC does not identify any misleading statement.  The FAC again refers to Chantix's packaging and label, which refer to the drug as "Chantix" and list its active ingredient as varenicline.  But the plaintiffs do not explain how these statements are false or misleading.  It is not enough to allege that the plaintiffs inferred from this label that the product did not contain N-nitroso-varenicline.  A plaintiff does not have a claim under the GBL just because she comes away from an advertisement with an incorrect impression.  That impression must be reasonably traceable to a misleading statement from the defendant.  See Geffner v. Coca-Cola co., 928 F.3d 198, 200-01 (2d Cir. 2019) (dismissing a GBL claim brought by plaintiffs who unreasonably inferred from the term "diet" in the brand name "Diet Coke" that the drink would cause weight loss).

The GBL claims are no more successful if based on an omission rather than an affirmative misrepresentation.  Section 349 of the GBL prohibits "representations or omissions . . . likely to mislead a reasonable consumer."  Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995).  A claim based on a material omission, however,

19

must allege that "the business alone possesses material information that is relevant to the consumer and fails to provide this information." Id.  As discussed above, the FAC does not plausibly allege that Pfizer knew about the nitrosamine contamination before it issued its recall.

The FAC alleges that one of Pfizer's distributors was informed that its supply of varenicline was at risk of being contaminated several months before it began to recall Chantix. But neither this allegation, nor plaintiffs' conclusory assertions, are sufficient to plausibly establish that Pfizer knew about any nitrosamine contamination in the medication that the plaintiffs purchased at the time they purchased it. Accordingly, the GBL claims are dismissed.

E.   Breach of Express Warranty

Pfizer moves to dismiss the plaintiffs' claims for breach of express warranty.  Both New York and New Jersey have adopted the Uniform Commercial Code's definition of express warranty. See N.J. Stat. Ann. § 12A:2-313; N.Y. U.C.C. § 2-313.  To bring a claim for breach of warranty, a plaintiff must plausibly allege that the defendant breached some affirmation, promise, or description related to the goods that became a "basis for the bargain." Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171

F.3d 818, 824 (3d Cir. 1999); Rogath v. Siebenmann, 129 F.3d
261, 264 (2d Cir. 1997).

The FAC does not plausibly allege that Pfizer breached any
express warranty.  The plaintiffs argue that nitrosamine
contamination breached Pfizer's promise that the medication sold
was Chantix, with the active ingredient varenicline.  But again,
the presence of a nitrosamine does not mean that the medication
they received was not Chantix, or that it did not contain the
active ingredient varenicline.  The FAC has not alleged that
Pfizer issued any express warranty that their medication was
completely safe or free from nitrosamines.  Accordingly, the
presence of nitrosamines does not provide a basis for a breach
of express warranty claim.  See Basko v. Sterling Drug, Inc.,
416 F.2d 417, 428 (2d Cir. 1969) (dismissing a claim for breach
of express warranty when a drug did not warrant that it was
completely harmless or free from all side effects).

The plaintiffs attempt to rely on In re Valsartan,
Losartan, & Irbesartan Prods. Liability Litig., MDL No. 2875,
2021 WL 222776 (D.N.J. Jan. 22, 2021), to establish the
existence of a warranty that Chantix was not contaminated.  In
that case, the District Court found that a generic drug's label
conveyed an express warranty that the generic was chemically

21

equivalent to the brand name drug.  Id. at *11.  It is
unnecessary to consider whether Valsartan was correctly decided.
Chantix is itself a brand name drug.  Its name therefore confers
no warranty that it is identical to anything except itself.  The
plaintiffs therefore have not plausibly alleged that Pfizer
breached any express warranty.

 F.   Breach of the Implied Warranty of Merchantability

 Under the Uniform Commercial Code, a sale of goods by
default comes with an implied warranty "that the goods shall be
merchantable . . . if the seller is a merchant with respect to
goods of that kind."  N.Y. U.C.C. § 2-314(1); N.J. Stat. Ann. §
12A:2-314(1).  The implied warranty of merchantability "does not
require that the goods be perfect or that they fulfill a buyer's
every expectation; it only requires that the goods sold be of a
minimal level of quality."  Corania v. Philip Morris USA, Inc.,
715 F.3d 417, 433-34 (2d Cir. 2013) (New York law) (citation
omitted).  See also N.J. Transit Corp. v. Harsco Corp., 497 F.3d
323, 330 (3d Cir. 2007) (under New Jersey law, an implied
warranty of merchantability "simply means that the thing sold is
reasonably fit for the general purpose for which it is
manufactured and sold.").  Under New York law, a claim for
breach of implied warranty requires privity, unless the claim

arises out of a personal injury.  Bellevue S. Assocs., 78 N.Y.2d at 298 ("Defenses available to claims of breach of the implied warranty of merchantability include . . . lack of privity."); N.Y. U.C.C. § 2-318 (excepting from this requirement claims in which the plaintiff "is injured in person by breach of the warranty").

The FAC alleges that Allen purchased Chantix from a pharmacy rather than from Pfizer.  And it does not allege that Allen was personally injured by taking the drug.  Accordingly, New York law precludes Allen's claim for breach of the implied warranty of merchantability for lack of privity.

Additionally, both plaintiffs' claims for implied warranty of merchantability fail because the FAC does not plausibly allege that the warranty was breached.  The FAC does not allege that Chantix failed to fulfill its purpose of helping its users to quit smoking.  Instead, the plaintiffs argue that the warranty was breached because Chantix could not be safely used. But, even though the FAC alleges that the plaintiffs consumed Chantix, it does not allege that the contamination harmed the plaintiffs, or even put them at significant risk.

The plaintiffs nevertheless argue that the medication was unmerchantable because it contained N-nitroso-varenicline in

excess of the legal limit.  But this does not establish that the Chantix was unfit for its ordinary purpose.  On the contrary, in announcing the recall, the FDA stated that there was "no immediate risk" to patients taking Chantix, and urged patients to continue taking the drug even after the recall.  FDA Updates and Press Announcements on Nitrosamine in Varenicline (Chantix), FDA (Sept. 17, 2021), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-nitrosamine-varenicline-chantix.[3]  The plaintiffs have therefore failed to plausibly allege that Chantix was unfit to help consumers quit smoking.

G.   Unjust Enrichment

Finally, Pfizer moves to dismiss the claim for unjust enrichment.  To sustain a claim for unjust enrichment under New York law, a plaintiff must plausibly allege "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  Myun-Uk

---

[3] The Court may consider the FDA's announcement because it is incorporated into the complaint by reference.  See Chambers v. Tine Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  Additionally, the contents of the FDA's website are subject to judicial notice because they can be "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  See also Cangemi v. United States, 13 F.4th 115, 124 n.4 (2d Cir. 2021) (taking judicial notice of the contents of a government website).

Choi v. Tower Research Capital LLC, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted).  "[U]njust enrichment is not a catchall cause of action to be used when others fail." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012).  It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id. (citation omitted). Similarly, under New Jersey law, unjust enrichment does not provide an independent cause of action under tort law. See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 936 (3d Cir. 1999).  Instead, it functions primarily as a justification for restitutionary remedies when a defendant has been "enriched beyond its contractual rights." VRG Corp v. GKN Realty Corp., 135 N.J. 539, 554 (1994) (citation omitted).

The only allegations in the FAC specific to the unjust enrichment claim state that Pfizer accepted and kept the plaintiffs' money obtained from selling Chantix.  The plaintiffs argue that dismissal of the unjust enrichment claim is premature.  But the plaintiffs do not explain why their unjust enrichment claim is distinct from their other claims, or distinct from a conventional tort or contract action. Accordingly, the unjust enrichment claim is dismissed.

## Conclusion

Pfizer's December 1 motion to dismiss is granted.  The Clerk of Court shall enter judgment for the defendants and close the case.


Dated:      New York, New York
            February 16, 2022


                                    _____
                                         DENISE COTE
                                 United States District Judge